# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

TAMIRA DURAND,             :
     Plaintiff,          :
                              :
     v.                    :     Case No. 3:15cv1476(VLB)
                              :
LIDIA SANTINI, ET AL.,      :
     Defendants.      :

## RULING AND ORDER

The plaintiff, Tamira Durand, is currently confined at Carswell Federal Medical Center in Fort Worth, Texas ("FMC Carswell"). She has filed a complaint pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). She names Physician Assistants Lidia Santini and Cesar Villa, Clinical Director Irizarry ("Dr. Irizarry") and Counselor Mancuso as defendants.

Pursuant to 28 U.S.C. § 1915A(b), a district court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

The plaintiff asserts that on or about June 28, 2013, she injured her left knee playing basketball at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury").  A nurse diagnosed the plaintiff as suffering from temporary knee and joint pain and issued her crutches.  At the time, the plaintiff was housed on the top tier and was assigned a top bunk in her cell.

On July 1, 2013, the plaintiff's knee was swollen and she could not put any weight on it.  Physician Assistant Santini did not examine the plaintiff, but referred her for x-rays of her left knee.  On July 26, 2013, the plaintiff complained that her knee was very painful and that it was difficult to climb the stairs to reach her bunk.  Physician Assistant Santini noted that the x-rays showed no

2

abnormalities.  At the plaintiff's request, Physician Assistant Santini referred her to an orthopedist.

On August 1, 2013, the plaintiff's knee buckled during her shift in the food services department.  A nurse gave her medication for the pain in her knee.  On August 27, 2013, a nurse issued the plaintiff a knee brace.

On September 10, 2013, Physician Assistant Villa treated the plaintiff for diarrhea, but did not treat the plaintiff's knee pain.  On September 24, 2013, Physician Assistant Villa treated the plaintiff for diarrhea and informed the plaintiff that she was on the waiting list to see an orthopedist.

On September 26, 2013, a nurse issued the plaintiff a temporary bottom bunk pass.  On September 30, 2013, the plaintiff complained that her knee was still swollen and was locking up.  Physician Assistant Villa extended the plaintiff's bottom bunk pass.

On November 14, 2013, the plaintiff sought treatment for back pain.  A nurse noted that the plaintiff had undergone an MRI in 2012 which showed bulging discs in her lower spine.  The nurse prescribed pain medication and gave the plaintiff a pass so that she did not have to return to work.  Later that day, Physician Assistant Villa determined that the plaintiff did not meet the criteria for a bottom bunk pass.

The following day, the plaintiff complained of low back pain that shot down her left leg and also numbness in her left foot.  Physician Assistant Villa administered an injection of medication to the plaintiff's back, but refused to

issue her a bottom bunk pass.  He directed the plaintiff to speak to someone on "Mainline" regarding a bottom bunk pass."  Compl., Doc. No. 1 at 13.

On November 18, 2013, Dr. Irizarry examined the plaintiff.  The plaintiff complained of knee and back pain.  Based on the results of the x-rays of her knee, Dr. Irizarry ruled out an injury to her knee ligaments.  He did not believe the plaintiff's complaints of back pain, did not notice the notation regarding her prior history of bulging discs in her lower spine and refused to issue her a bottom bunk pass.

On November 25, 2013, Dr. Irizarry examined the plaintiff.  When he reviewed the plaintiff's medical chart, he noticed the 2012 MRI of the plaintiff's lower back that reflected bulging discs.  Based on the MRI results, he issued the plaintiff a bottom bunk pass for thirty days.

On December 20, 2013, Physician Assistant Villa extended the plaintiff's lower bunk pass and referred her to a neurologist.  On December 29, 2013, the plaintiff experienced severe pain in her back and down one of her legs as well as weakness and an inability to walk.  A physician examined the plaintiff and administered an injection of medication to relieve her symptoms.

On December 31, 2013, the plaintiff's symptoms had not subsided.  Medical officials transferred the plaintiff to Danbury Hospital for treatment.  An MRI of the plaintiff's lumbar spine revealed disc herniation and stenosis.  The plaintiff remained in the hospital for five days and received various medications and injections to relieve the pain in her back.

Hospital officials released the plaintiff back to FCI Danbury on January 4, 2014 with a prescription for medication and a walker.  On January 9, 2014, Dr. Izarry examined the plaintiff and renewed her pain medication.

On or about January 9, 2014, an orthopedist examined the plaintiff and noted that the plaintiff suffered from a herniated disc and radiculopathy on the left side of her lower spine.  He recommended that she be re-evaluated by a neurosurgeon for further treatment.  He did not examine the plaintiff's left knee.

On January 10, 2014, a neurologist performed an EMG to assess the health of her muscles and nerves in her lower extremities.  The neurologist noted that the results of the EMG revealed that the plaintiff suffered from mild denervation and radiculopathy in her lower spine and referred her to a neurosurgeon.  He also prescribed pain medication.

On January 24, 2014, Physician Assistant Villa examined the plaintiff due to her complaints of numbness and weakness in her left calf.  He prescribed medication for the plaintiff's symptoms.

On February 10, 2014, an orthopedist examined the plaintiff due to her complaints of lower back pain and left leg numbness.  The orthopedist would not increase the plaintiff's pain medication, but informed her that she had been approved for neurosurgery.

Dr. Iziarry examined the plaintiff on February 27, 2014, and noted that he could not figure out the source of the plaintiff's pain.  Although, he thought the plaintiff might be malingering, he increased her pain medication.

5

On March 5, 2014, prison officials at Danbury transported the plaintiff to the FMC Carswell for treatment.  Medical officials confined the plaintiff in the hospital and restricted her to ambulating in a wheelchair until surgery could be performed on her spine.

On May 23, 2014, an orthopedist examined the plaintiff and noted instability in her left knee.  He indicated that an MRI might be necessary.  The orthopedist also noted the results of the EMG study and referred the plaintiff to an orthopedist in the spine clinic.

The plaintiff claims that in June 2014 an MRI of her left knee revealed damage to her medial collateral ligament.  The plaintiff underwent lower back surgery on January 27, 2015 at FMC Carswell.  The plaintiff seeks monetary damages for relief.

I.   Physician Assistants Santini and Villa and Dr. Irizarry

The plaintiff alleges that Physician Assistants Santini and Villa and Dr. Irizarry failed to respond to her serious medical needs in a timely manner.  As a result, she suffered pain in her knee and back.

Deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  There are both subjective and objective components to the deliberate indifference standard.  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294,

6

298 (1991).  The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The plaintiff must also allege that, subjectively, the defendant prison official "act[ed] with a sufficiently culpable state of mind."  *Hathaway*, 99 F.3d at 553 (citations omitted).  Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).  Because mere negligence will not support a section 1983 claim, not all lapses in prison medical care constitute a constitutional violation.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). The conduct complained of must involve "an unnecessary and wanton infliction of pain or be repugnant to the conscience of mankind."  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (internal quotation marks omitted).

    A.    <u>Physician Assistant Santini</u>

      After the plaintiff injured her left knee playing basketball in June 2013, a nurse diagnosed the plaintiff as suffering from knee and joint pain and provided her with crutches.  On July 1, 2013, Physician Assistant Santini examined the plaintiff due to her complaints of swelling and instability in her left knee, referred her for x-rays and issued her a pass to rest her knee.   The x-rays taken of the plaintiff's left knee on July 12, 2013 showed no abnormalities.

      On July 26, 2013, when the plaintiff continued to complain of pain and swelling in her left knee, Physician Assistant Santini referred the plaintiff to be seen by an orthopedist and sent her back to work at her prison job.  There are no

allegations that Physician Assistant Santini treated the plaintiff after July 26, 2013.

The allegations reflect that Physician Assistant Santini responded to the plaintiff's complaints of swelling, pain and instability in her left knee by referring her for diagnostic testing, issuing her a pass to rest her knee rather than performing her prison job, and then referring her to an orthopedist for evaluation. The allegations against Physician Assistant Santini with regard to the injury she claims to have suffered playing basketball do not state a claim of deliberate indifference to medical needs. The claims against Physician Assistant Santini are therefore dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B.    Defendant Villa

The plaintiff claims that Physician Assistant Villa saw her in September 2013, but made no mention of knee pain in his medical notes. He did inform the plaintiff that she was still on the list to see an orthopedist. The plaintiff saw a nurse later in September, who issued her a temporary bottom bunk pass. Physician Assistant Villa subsequently extended the bottom bunk pass.

The plaintiff did not see Physician Assistant Villa again for nearly a month and a half. On November 15, 2013, the plaintiff complained of lower back pain. Physician Assistant Villa administered an injection of pain medication, but denied the plaintiff's request for a lower bunk pass.

On November 25, 2013, Dr. Izarry issued the plaintiff a lower bunk pass for thirty days. When the plaintiff returned to the medical unit on December 20, 2013,

8

Physician Assistant Villa renewed the plaintiff's pass for a lower bunk and also referred the plaintiff to a neurologist because of her complaints of back pain.

The plaintiff saw Physician Assistant Villa again on January 24, 2014 because of numbness in his left calf.  Physician Assistant Villa prescribed medication to treat the symptoms.  These allegations do not show deliberate indifference on the part of Physician Assistant Villa to the plaintiff's back or knee injuries.  Thus, the claims against Physician Assistant Villa are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

C.    Dr. Irizarry

The plaintiff claims that during the time period from November 2013 to February 2014, Dr. Irizarry treated her on three occasions and on a fourth occasion re-filled a prescription for pain medication.  When Dr. Irizarry briefly examined the plaintiff on November 19, 2013, he allegedly opined that the pain in the plaintiff's knee did not indicate ligament damage.  Dr. Irizzary also failed to notice the nurse's notation in the plaintiff's file that an MRI from 2012 showed bulging discs in her lower spine.  When Dr. Irizzary examined the plaintiff six days later, he became aware of the MRI from 2012 and issued the plaintiff a bottom bunk pass until the injury to the plaintiff's back could be resolved.   After the plaintiff returned to the prison facility from Danbury Hospital on January 4, 2014, Dr. Irizzary re-filled her prescription for pain medication for an additional seven days.

On February 27, 2014, Dr. Irizarry examined the plaintiff due to the

plaintiff's complaints of pain in her lower back and pain and numbness in her left leg.  Dr. Irizarry was uncertain as to the source of the plaintiff's pain.  He increased the dosage of pain medication.  On March 5, 2014, prison officials at FCI Danbury transported the plaintiff to FMC Carswell in Forth Worth, Texas.

The plaintiff contends that Dr. Irizarry should have ordered an MRI to rule out ligament damage rather than concluding that no ligament damage had occurred based on his observations and the results of her knee x-rays.  The plaintiff's claim with regard to Dr. Irizarry's decision that her knee injury was not severe and did not require an MRI is a claim of a difference of opinion or diagnosis.  The Second Circuit has held that inmates are not entitled to the medical treatment of their choice.  *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. *See Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Perez v. Hawk*, 302 F. Supp. 2d 9, 21 (E.D.N.Y. 2004) ("although the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary").

In addition, the allegation that Dr. Irizarry failed to notice the notation in the plaintiff's file regarding the MRI of her lower spine from 2012 that showed bulging discs and should have issued a bottom bunk pass, are claims of negligence, at most.  These allegations do not state a claim of deliberate indifference to medical

10

needs.  *See Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Smith*, 316 F.3d at 184 ("the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law"); *Chance*, 143 F.3d at 702 ("negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim") (citation omitted); *Espinal v. Coughlin,* No. 98Civ.2579 (RPP), 2002 WL 10450, at *4 (S.D.N.Y. Jan. 3, 2002) (allegation that medical staff failed to correctly diagnose the plaintiff's medical condition based on review of plaintiff's medical records was "at most an allegation of negligence or disagreement with a course of treatment which does not rise to the deliberate indifference standard").  The claims against Dr. Irizarry are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

## II.    Known and Unknown Defendants

The caption of the complaint includes a defendant described as "Those known and unknown to Petitioner being a party hereto."  The plaintiff does not describe these defendants or otherwise refer to them in the body of the complaint.  As such, she has not alleged that they violated her federally or constitutionally protected rights.  The claims against the known and unknown defendants are therefore dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

III.   **Counselor Mancuso**

The plaintiff alleges that although prison officials issued her passes for a lower bunk during her confinement at FCI Danbury, she asked Counselor Mancuso on several occasions to move her to a cell on the first floor because it was difficult for her to climb the stairs to reach the upper tiers.  Counselor Mancuso refused to grant the plaintiff's request despite the fact that her medical status reports indicated that she was to be housed in a cell on the first floor and assigned to a bottom bunk as of December 11, 2013.  The plaintiff attaches medical status reports from December 11, 2013 to January 24, 2014.  *See* Compl., Doc. No. 1 at 28-31.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust his or her administrative remedies before bringing an action with respect to prison conditions.  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, *see Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  The exhaustion requirement applies equally to *Bivens* claims.  *See Williams v. Metropolitan Detention Center*, 418 F. Supp. 2d 96 (E.D.N.Y. 2005).  The statute clearly states that inmates must exhaust all available administrative remedies before filing suit.  *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).  Thus, any

12

attempt to exhaust administrative remedies after the case was filed is ineffective to satisfy the exhaustion requirement.

Although the plaintiff attempted to exhaust her administrative remedies as to her request for a bottom bunk prior to November 25, 2013, when Dr. Irizarry re-issued her a bottom bunk pass, she makes no mention of having exhausted her available administrative remedies as to her request that Counselor Mancuso assign her to a cell on the first floor of the housing tier.  *See* Compl., Doc. No. 1 at 16-19.  The available administrative remedies for a *Bivens* claim consist of a four-step process set forth in the Bureau of Prisons' Administrative Remedy Program. *See* 28 C.F.R. § 542.  The four step process is as follows:  (1) the inmate must attempt informal resolution with prison staff; (2) the inmate must submit a formal written "Administrative Remedy Request" to the warden within twenty days of the incident giving rise to his claim; (3) the inmate must appeal an adverse decision from the warden to the appropriate regional director within twenty days from the denial of the formal request; and (4) the inmate must appeal the Regional Director's adverse decision to the Bureau of Prisons General Counsel's office within thirty days.  *See* 28 C.F.R. §§ 542.13(a), 542.14(a), 542.15(a).

The plaintiff does not allege that she attempted to comply with the Bureau of Prisons' Administrative Remedy Program by submitting written remedy requests to the Warden, Regional Director, or Bureau of Prisons' General Counsel's office regarding Counselor Mancuso's alleged failure to comply with the medical status

13

reports that she be housed in a cell on the first floor.  Nor has she submitted any evidence her attempts to exhaust this *Bivens* claims prior to filing the complaint.

Failure to exhaust administrative remedies is an affirmative defense.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  A court may, however, dismiss a claim where the allegations on the face of the complaint establish that it is subject to dismissal, even on the basis of an affirmative defense.  *See id.* at 213-16 (acknowledging that court may dismiss a complaint sua sponte where an affirmative defense is apparent on the face of the complaint).

The Second Circuit has cautioned the district courts, however, not to dismiss a case *sua sponte* without first ensuring that plaintiff has notice and an opportunity to be heard.  *See Abbas v. Dixon*, 480 F.3d 636, 639-40 (2d Cir. 2007); *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) (requiring district court to afford prisoner notice and opportunity to demonstrate that he has exhausted his available remedies).  Accordingly, the court directs the plaintiff to explain why the *Bivens* claim against Counselor Mancuso regarding his refusal to grant her requests to be housing on the first floor should not be dismissed for failure to exhaust her administrative remedies before filing this action.  Any such dismissal would be without prejudice to plaintiff re-filing a new case asserting the *Bivens* claim after fully exhausting her administrative remedies.

The plaintiff shall submit her response within thirty (30) days from the date of this order.  The plaintiff shall attach to her response copies of the documents showing exhaustion of her *Bivens* claims.  Failure to provide evidence of

14

exhaustion, or evidence of why plaintiff was not required to exhaust her administrative remedies, within the time provided will result in the dismissal of the *Bivens* claims without any further notice.

## ORDERS

The court enters the following orders:

(1)     All claims against defendants Irizarry, Santini, Villa and Those Known and Unknown to Petitioner are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

(2)     Within thirty days of the date of this order, the plaintiff shall file her response regarding the exhaustion requirement as it pertains to the claim that Counselor Mancuso refused to comply with the medical status reports that she be housed in a cell on the first floor as of December 11, 2013.  Failure to comply with this order within thirty days will result in dismissal of the claim against Counselor Mancuso on the ground that plaintiff did not exhaust administrative remedies prior to filing this action.  Any such dismissal would be without prejudice to plaintiff re-filing this action against Counselor Mancuso after fully exhausting her administrative remedies.

SO ORDERED at Hartford, Connecticut this 15th day of September, 2016.


_____/s/_____
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE

15